UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:                                           :
                                                 :
CWEB LIQUIDATION, LLC                            :       CASE NO. 17-54087-lrc
f/k/a CARRIERWEB, LLC                            :
                                                 :       CHAPTER 11
        Debtor                                   :
_____ :

CHAPTER 11 PLAN OF LIQUIDATION
JOINTLY SUBMITTED BY:


CWEB LIQUIDATION, LLC f/k/a CARRIERWEB, LLC
DEBTOR AND DEBTOR IN POSSESSION
and
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF CWEB LIQUIDATION, LLC f/k/a CARRIERWEB, LLC

June 25, 2019

Attorneys for CWeb Liquidation, LLC          Attorneys for Official Committee of
f/k/a CarrierWeb, LLC                         Unsecured Creditors
G. Frank Nason, IV                            Bradford J. Sandler
Georgia Bar No. 535160                        (DE Bar No. 4142)
LAMBERTH, CIFELLI,                            Colin R. Robinson
 ELLIS & NASON, P.A.                          (DE Bar No. 5524)
1117 Perimeter Center West                    PACHULSKI STANG ZIEHL
Suite N313                                    & JONES LLP
Atlanta, Georgia 30338                        919 North Market Street
(404) 262-7373                                17th Floor P.O. Box 8705
                                              Wilmington, DE 19899 (Courier 19801)
                                              (302) 652-4100


                                              Henry F. Sewell, Jr.
                                              Georgia Bar No. 636265
                                              LAW OFFICES OF HENRY F. SEWELL,
                                              JR., LLC
                                              2964 Peachtree Road NW, Suite 555
                                              Atlanta, Georgia 30305
                                              Direct: (404) 926-0053

## Introduction

Pursuant to Title 11 of the United States Code, CWeb Liquidation, LLC f/k/a CarrierWeb, LLC (the "Debtor"), Chapter 11 debtor and debtor in possession, and The Official Committee of Unsecured Creditors of CWeb Liquidation, LLC f/k/a CarrierWeb, LLC (the "Committee") submit and propose this "Chapter 11 Plan Jointly Submitted by: CWeb Liquidation, LLC f/k/a CarrierWeb, LLC, Debtor and Debtor in Possession and The Official Committee of Unsecured Creditors of CWeb Liquidation, LLC f/k/a CarrierWeb, LLC" (the "Plan").

## Article I

### DEFINITIONS

Unless the context requires otherwise, the following terms shall have the respective meanings specified below whenever used in the Plan. Capitalized terms not defined in this Plan have the meanings ascribed to such terms in Title 11 of the United States Code and the Federal Rules of Bankruptcy Procedure. Accounting terms not defined in the Plan shall have the meanings ascribed to such terms in accordance with generally accepted accounting principles currently in effect. Whenever from the context it appears appropriate, terms stated in the singular or plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine, and the neuter.  The words "herein," "hereof," and "hereunder" and other words of similar import shall refer to this Plan as a whole, including any and all exhibits and schedules to the Plan, as the same may be amended.

"Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses of preserving the estate and administering the Case that arose or accrued or that shall arise or accrue in the ordinary course of business during the period between the Petition Date and the Closing Date; (b) any Professional Fee Claim; and (c) any fee or charge assessed against the Debtor under 28 U.S.C. § 1930.

"Allowed Administrative Claim" means all or that portion of an Administrative Claim to the extent it has been allowed by a Final Order of the Bankruptcy Court.

"Allowed Claim and Allowed . . . Claim" means all or that portion of any Claim, other than an Administrative Claim, against the Debtor to the extent that: (a) proof of such Claim has been filed or is deemed filed pursuant to § 1111 of the Bankruptcy Code and is not the subject of an objection filed by the last date set by the Bankruptcy Court for filing objections to Claims; or (b) it has been allowed by this Plan or a Final Order of the Bankruptcy Court after objection pursuant to the procedures established in this Plan for resolution of Disputed Claims and in

2

respect of which there is no proceeding pending that asserts an Avoidance Action or Cause of Action against the Holder of such Claim.  The term "Allowed," when used to modify a reference in the Plan to any Claim or Class of Claims, shall mean a Claim (or any Claim in any such Class) that is so allowed.

"APA" means the "Asset Purchase Agreement by and between I.D. Systems, Inc. and CarrierWeb, LLC" approved by the Sale Order.

"Avoidance Action" means any claim or right arising out of or maintainable pursuant to §§510, 544, 545, 546, 547, 548, 549, 550 or 553 of the Bankruptcy Code or under any other similar applicable law, regardless of whether any action to assert such claim or right has been commenced or asserted prior to the Effective Date.

"Bankruptcy Code" means Title 11 of the United States Code, as amended, as applicable to the Bankruptcy Case.

"Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable from time to time to the Case.

"Business Day" means a day on which commercial banks in Georgia are not required or authorized by law to be closed.

"CarrierWeb Ireland" means CarrierWeb Services, Ltd., a company organized under the laws of Ireland.

"Case" means the Debtor's Chapter 11 bankruptcy case.

"Cash" means lawful currency of the United States and its equivalents, provided, however, that any distributions under this Plan will be deemed to be made in Cash if made by check drawn on any United States bank, or by wire transfer.

"Causes of Action" means all causes of action, choses in action, claims, rights, suits, accounts or remedies belonging to or enforceable by the Debtor, including Avoidance Actions, whether or not matured or unmatured, liquidated or unliquidated, contingent or non-contingent, known or unknown, or whether in law or in equity, and whether or not specifically identified in the Debtor's Schedules.

"Claim" means a claim, as defined in Section 101(5) of the Bankruptcy Code, against the Debtor.

3

"Claims Bar Date" means: (a) with respect to Administrative Claims that accrued or were incurred during the period commencing after the Petition Date but prior to the Confirmation Date (other than U.S. Trustee fees or Professional Fee Claims) the first Business Day that is twenty one (21) days after the Confirmation Date; or (b) with respect to general prepetition Claims for which a Proof of Claim is required to be filed, June 30, 2017; or (c) with respect to prepetition Claims of governmental units for which a Proof of Claim is required to be filed, September 5, 2017; or (d) with respect to rejection claims relating to any executory contract or unexpired lease rejected pursuant to the terms of this Plan, the first Business Day that is twenty one (21) days after the Confirmation Date.

"Class" means a class of Claims or Interests as defined in this Plan.

"Closing Cash Payment" means the net proceeds (after payment in full of the DIP Loan) totaling $2,146,505.37 paid January 30, 2019, by IDSY pursuant to the Sale Order.

"Closing Obligations" means any obligation of the Debtor and IDSY arising under or in connection with the sale of the Purchased Assets pursuant to the Sale Order and arising under or in connection with all documents executed by the Debtor and IDSY in connection with such sale.

"Committee" means the Official Committee of Unsecured Creditors appointed on or about March 27, 2017.

"Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order.

"Confirmation Hearing" means the duly noticed hearing held by the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as may be adjourned by the Court from time to time without further notice other than announcement of the adjourned date of the Confirmation Hearing at such hearing.

"Confirmation Order" means the order of the Bankruptcy Court confirming this Plan.

"Court" means the Bankruptcy Court or any other Court of the United States with authority over the Cases or, with respect to any particular proceeding arising under or related to the Cases, any other Court that is exercising jurisdiction over such proceeding.

"Creditor" means the Holder of a Claim against the Debtor.

"Cure Costs" means the $565,465.50 payable from the Closing Cash Payment to parties on account of executory contracts and unexpired leases assumed and assigned to IDSY pursuant to the Sale Order.

"Debtor" means CWeb Liquidation, LLC f/k/a CarrierWeb, LLC.

4

"Designated Notice" means notice and an opportunity for a hearing as described in Section 102(a) of the Bankruptcy Code. Following entry of the Confirmation Order and through the date of entry of a Final Decree, the time for the giving of any notice shall be reduced to ten (10) Business Days, and notice shall be limited to the Notice Parties. When a party gives Designated Notice and no written objection is served within 10 Business Days of service, the party to whom Designated Notice is given shall be presumed to have consented to or have no opposition to the relief or request identified in the Designated Notice. If a timely objection is served, the Court will hold a hearing on the objection on no less than seven (7) days' notice.

"DIP Loan" means the loan from IDSY to Debtor pursuant to the "Final Order Authorizing Financing and Granting Senior Liens" entered January 11, 2019, at Docket No. 171.

"Disclosure Statement" means the Disclosure Statement filed with respect to this Plan, as approved by the Court and as may be further amended or modified.

"Disputed Claim or Disputed . . . Claim" means a Claim that (a) is not an Allowed Claim or (b) is the subject of a Cause of Action or objection and that has not been allowed or disallowed by a Final Order.

"Distribution" means a distribution of Cash to a Claimant on account of an Allowed Claim pursuant to the terms of this Plan.

"Distribution Date" means any date on which distributions of Cash are to be made from the Distribution Fund.

"Distribution Fund" means the account created for the purpose of making Distributions as set forth in Article 4.01 below.

"Effective Date" means the day that is ten (10) Business Days after the Confirmation Date.

"efreightrac" means efreightrac, LLC.

"Final Decree" means a Final Order of the Bankruptcy Court closing the Case.

"Final Order" means an order or judgment of a Court (including one approving a settlement) entered on the docket which: (a) shall not have been reversed, stayed, modified or amended and as to which the time to appeal from, or to seek review or rehearing of, shall have expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (b) if appealed from, shall have been affirmed (or the appeal dismissed) and the time to appeal from such affirmance or to seek review or rehearing thereof shall have expired, or no further hearing, appeal or petition for certiorari can be taken or granted.

5

"General Unsecured Claims" mean all Claims against the Debtor arising on or before the Petition Date that are not Priority Claims or Administrative Claims.

"Holder" means the beneficial owner of any Claim or Interest.

"IDSY" means I.D. Systems, Inc., purchaser of the Purchased Assets pursuant to the Sale Order.

"Interests" means any and all ownership rights and interests in the Debtor held by the Interest Holders as of the Petition Date.

"Interest Holders" means efreightrac in its capacity as Holder of 72.72% of the outstanding Interests in the Debtor and Marous in his capacity as Holder of 28.28% of the outstanding Interests in the Debtor.

"Lien" means any mortgage, lien, pledge, charge, security interest, encumbrance or other legally cognizable security device of any kind affecting or attaching to property of the estate of the Debtor.

"Liquidating Agent" means the agent, selected by the Committee in its sole and absolute discretion, upon whom management of the Liquidating Debtor is vested in accordance with Article 4.02 below.

"Liquidating Debtor" means the Debtor from and after the Effective Date.

"Marous" means John Marous.

"Net Proceeds" means the remaining balance of the Closing Cash Payment after payment of all Cure Amounts and other expenditures paid or reserved as required under the Sale Order and after payment or reserve of all other expenditures authorized by orders of the Bankruptcy Court.

"Notice Parties" means (i) with respect to notices served by the Debtor, counsel for the Committee, the U.S. Trustee,  and all other parties in interest who, after entry of the Confirmation Order, have filed a request for notice with the Clerk of the Court and have served same on the Debtor's counsel, or (ii) with respect to notices served by a party other than the Debtor, the Debtor and its counsel, counsel for the Committee (unless such notice is being served by the Committee), the U.S. Trustee (unless such notice is being served by the U.S. Trustee), and all other parties in interest who, after entry of the Confirmation Order, have filed a request for notice with the Clerk of the Court and have served same on the Debtor's counsel.

"Petition Date" means March 6, 2017.

"Plan" means this plan proposed by the Proponents, as it may be amended or modified from time to time, including all exhibits and reports annexed hereto or referenced herein.

"Post-Confirmation Administrative Claims" means costs and expenses incurred, after the Confirmation Date, in connection with administration and consummation of this Plan, including, without limitation, Post-Confirmation Professional Fee Claims.

"Post-Confirmation Professional Fee Claims" means Post-Confirmation Administrative Claims for compensation earned, and reimbursement of expenses incurred, by attorneys, accountants, or other professionals employed by the Liquidating Debtor or the Committee.

"Pro Rata" means, with respect to any Distribution to a Class under this Plan, as of any particular Distribution Date, proportionate sharing pursuant to which the ratio of the cumulative amount of all funds distributed on account of an Allowed Claim to the amount of such Allowed Claim is the same as the ratio of the cumulative amount distributed to such Class to the total amount of all Allowed Claims and Disputed Claims classified into such Class.

"Professional Fee Claims" means Claims for compensation earned and reimbursement of expenses of attorneys, accountants, or other professionals employed by the Debtor or the Committee, with approval of the Bankruptcy Court.

"Professional Fee Trust" means the funds held in trust by counsel for the Debtor in accordance with the "Interim Order Authorizing Financing and Granting Senior Liens" (Docket No. 68) and "Final Order Authorizing Financing and Granting Senior Liens" (Docket No. 71) for the purpose of paying the Professionals.

"Priority Tax Claim" means a Claim that is entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

"Proponents" means the Debtor and the Committee.

"Purchased Assets" means the assets purchased by IDSY pursuant to the Sale Order, the APA, and any documents executed in connection with the consummation of the transactions approved by the Sale Order and contemplated under the APA.

"Restoration Payment" means the $700,000 payment from IDSY to Debtor upon the restoration of CarrierWeb Ireland to the Register of Companies in Ireland to the extent such restoration occurs before May 1, 2019.

"Sale Order" means the "Order (A) Approving Asset Purchase Agreement and Authorizing the Sale of Assets of the Debtor Outside the Ordinary Course of Business, (B) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, and Encumbrances, (C) Authorizing the Assumption and Sale and Assignment of Certain Executory Contracts and

Unexpired Leases, and (D) Granting Related Relief" entered January 27, 2019, at Docket No. 184.

"Schedules" means the schedules of assets and liabilities and any amendments thereto filed by the Debtors in their respective Cases pursuant to Section 521 of the Bankruptcy Code.

"Unclaimed Property" means any funds payable to Holders of Claims from the Distribution Fund that are unclaimed. Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (b) funds for checks which have not been presented and paid within 45 (45) days of their issuance, and (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such property.

"Unpaid Claims Reserve" means the reserve created pursuant to Section 4.03 of the Plan.

"U.S. Trustee" means the United States Trustee for Region 21, and the office of such United States Trustee.

## Article II

### TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to § 1122 of the Bankruptcy Code, certain Claims are unclassified.  Unclassified Claims are treated as follows:

2.01    Administrative Claims.  Allowed Administrative Claims are not classified in this Plan and are treated as follows:

(a)    Payment of Allowed Administrative Claims.  Holders of Allowed Administrative Claims other than Professional Fee Claims will be paid in full in cash as soon as practicable after the later of the Effective Date or the date such Claim becomes an Allowed Administrative Claim, unless otherwise agreed to by the Holder thereof. Other than quarterly United States Trustee's fees, which will be paid as they come due, and Professional Fee Claims, which may be filed at any time prior to entry of a Final Decree, any request for payment of an Administrative Claim arising on or before the Confirmation Date must be filed no later than the Claims Bar Date or such Administrative Claim will be forever barred. The Liquidating Debtor and the Committee shall have the right to object to the allowance of any Administrative Claim.

(b)    Payment of Professional Fee Claims. Professional Fee Claims with regard to the period prior to entry of the Confirmation Order shall be paid in the amount awarded pursuant to orders of the Bankruptcy Court and shall be paid in full in Cash as soon as practicable after the later of the Effective Date or the date such

Claim becomes an Allowed Administrative Claim, unless otherwise agreed to by the Holder thereof.

2.02    <u>Treatment of Other Certain Unclassified Claims</u>. Other unclassified Claims are treated as follows:

(a)    <u>Post-Confirmation Administrative Claims</u>. Post-Confirmation Administrative Claims, other than Post-Confirmation Professional Fee Claims, shall be paid as the same come due, without the necessity of Bankruptcy Court approval. Upon motion of any party in interest, the Bankruptcy Court may review any payment of such Post-Confirmation Administrative Claims and, if appropriate, order the return or refund of any such payment. Until entry of a Final Decree, all Post-Confirmation Professional Fee Claims for period prior to the entry of a Final Decree shall be subject to review by the Notice Parties. A party seeking payment of a Post-Confirmation Professional Fee Claim shall serve (by electronic mail or first-class mail) its invoice on the Notice Parties. Unless one or more of the Notice Parties files an objection with the Bankruptcy Court within fourteen (14) days of the service of the invoice, the Liquidating Debtor shall be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred.  If an objection is filed, then the Liquidating Debtor shall still be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred that are not the subject to an objection. The Bankruptcy Court shall retain jurisdiction over any objections to such fees and expenses that are filed and shall be authorized to determine whether to allow any disputed Post-Confirmation Professional Fee Claims following a hearing on no less than fourteen (14) days' notice to the parties to the dispute. Following entry of a Final Decree, Post-Confirmation Professional Fee Claims may be paid as they come due.

(b)    <u>Fees of U.S. Trustee</u>.  Any pre-confirmation fees due to the United States Trustee shall be paid by the Effective Date. Post-confirmation fees due the United States Trustee shall be paid on the date that such fees are due.

2.03    <u>Treatment of Executory Contracts and Unexpired Leases</u>. Except as provided in Article 6.01, Confirmation of the Plan shall operate as a rejection of any executory contract or unexpired lease not assumed and assigned to IDSY pursuant to the Sale Order. Any claims for damages arising from such rejection must be filed by the Claims Bar Date.

2.04    <u>Treatment of Priority Tax Clams</u>. Holders of Priority Tax Claims shall be paid the Allowed Amount of their Claim in full on the Effective Date. Attached hereto as Schedule 2.04 is a schedule of the Holders of the Priority Tax Claims, the amounts due thereon, and any anticipated objections thereto. In the event of unexpected delays in the payment of any Priority

Tax Claim, interest on such Claim shall be calculated as provided in Section 511 of the Bankruptcy Code. The Liquidating Debtor is required to timely file returns for and timely pay all postpetition taxes when due.

## Article III

### CLASSIFICATION AND TREATMENT
### OF CLAIMS AND INTERESTS; IMPAIRMENT

Claims and Interests are treated as set forth below.  A Claim or Interest shall be deemed classified in a particular Class only to the extent that (a) the Claim or Interest is included within the description of that Class, and (b) the Claim or Interest is not included in any other Class.  To the extent that any portion or remainder of the Claim or Interest qualifies within the description of a different Class, that portion of the Claim or Interest shall be classified in that different Class. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been satisfied, disallowed or extinguished before the Effective Date of the Plan.

3.01    Class 1 (General Unsecured Claims). Class 1 shall consist of the Allowed General Unsecured Claims. On the Effective Date, the Holders of Allowed General Unsecured Claims (excluding any Claim of efreightrac) shall receive Pro Rata their share of the funds in the Distribution Fund as provided in Article 5.02 below until such Holders receive their Allowed Claims in full. Attached hereto as Schedule 3.01 is a schedule of the Holders of General Unsecured Claims, the Allowed Amount of such Claims, and any anticipated or filed objections thereto. Confirmation of the Plan shall bind any Creditor for whom no amount is payable as set forth on Schedule 3.01, and any such Creditor shall be entitled to no Distributions under the Plan.

3.02    Class 2 (Interest Holders). Class 2 shall consist of the Interest Holders. The Interest Holders will retain their Interests in the Debtor as such Interests existed as of the Petition Date and shall receive their Pro Rata Share of the funds in the Distribution Fund after payment of the Distribution(s) to the Holders of Class 1 Claims as provided in Article 3.01 above. To the extent an Interest Holder has an Allowed Claim against the Debtor, any Distribution from the Distribution Fund may be treated at such Holder's discretion as repayment of debt.

3.03    Impairment. Class 1 is impaired and eligible to vote on the Plan. Class 2 is unimpaired and ineligible to vote on the Plan.

**Article IV**

MEANS FOR EXECUTION OF THE PLAN

4.01    Establishment of Distribution Fund. The Liquidating Debtor shall establish a segregated escrow account to be known and designated as the Distribution Fund and shall deposit in said account the Net Sale Proceeds, the Restoration Payment, and any funds in DIP bank accounts not expended or reserved for expenditure by the Confirmation Date. The funds in the Distribution Fund shall be held in escrow for the sole and exclusive benefit of those parties entitled to Distributions therefrom. The Distribution Fund may from time to time be invested in short term certificates of deposit, short term treasury bills, or money market accounts, provided that such deposits or investments comply with the requirements of § 345 of the Bankruptcy Code. All interest earned shall be retained in the Distribution Fund. The Liquidating Debtor shall be authorized to open such bank or other depository account or accounts as may be necessary or appropriate to carry out the provisions of the Plan.

4.02    Management. Except as otherwise provided below, upon Confirmation, sole and exclusive management and control of the Liquidating Debtor shall be vested in the Liquidating Agent pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, subject to the provisions of this Plan.

(a)    Authority of Distribution Agent.  The Liquidating Agent shall be authorized and empowered, in his representative capacity and not individually, to act on behalf of the Liquidating Debtor, and to exercise the rights and powers, and perform the duties, of the Liquidating Debtor in accordance with the provisions of this Plan. Whenever, under the terms of this Plan or otherwise, the Liquidating Debtor is authorized or empowered to take any action or perform any duty, the Liquidating Agent shall have exclusive and plenary authority to take such action or perform such duty for and on behalf of the Liquidating Debtor, subject to the provisions of this Plan. Until a Final Decree is entered, the Liquidating Agent shall file on behalf of the Liquidating Debtor all required post-confirmation reports with the Office of the U. S. Trustee and shall pay all post-confirmation quarterly fees due the U. S. Trustee.

(b)    Selection of Liquidating Agent. The initial Liquidating Agent shall be Brad Boe. Upon motion of any party in interest, the Bankruptcy Court for cause shown may designate some other person or entity to serve as Liquidating Agent. The Liquidating Agent shall be entitled to compensation and reimbursement of expenses in accordance with the standards applicable to professionals employed by a trustee set forth in Sections 330 and 331 of the Bankruptcy Code.

(c)    Limitation on Liability of Liquidating Agent.  The Liquidating Agent shall not be liable for any act it may do or omit to do while acting in good faith and in the exercise of reasonable business judgment; nor shall the Liquidating Agent be liable

in any event, except for its own gross negligence or willful misconduct. No recourse shall be had, directly or indirectly, against the Liquidating Agent personally, by legal or equitable proceedings or by virtue of any statute or otherwise.

(d)    Dissolution of the Debtor. Following (i) entry of a Final Decree, (ii) completion of all Distributions from the Distribution Fund, and (iii) the completion of the Liquidating Agent's duties set forth in this Plan, the Liquidating Debtor shall take such steps as are necessary to effect dissolution of the Debtor under Georgia law. The Liquidating Debtor shall be authorized to reserve from any final Distribution such amounts reasonably necessary to pay Post-Confirmation Administrative Claims and Post-Confirmation Professional Fees associated with such dissolution. Notwithstanding any other provision herein, upon Confirmation R. Fenton-May, the Debtor's Manager and CEO, shall remain Manager and CEO of the Liquidating Debtor, solely to effect such dissolution, and shall not receive compensation for any services rendered in connection with such dissolution.

4.03    Unclaimed Property.  Unclaimed Property is treated as follows:

(a)    Unclaimed Property shall be deposited in the Unpaid Claims Reserve to be held in trust for the benefit of the Holders of Allowed Claims entitled thereto under the terms of the Plan.  For a period of one-hundred eighty (180) days following the first Distribution or sixty (60) days after a Distribution is made to a Creditor on account of which Unclaimed Property first results (said period being hereinafter referred to as the "Claiming Period"), Unclaimed Property shall be held in the Unpaid Claims Reserve solely for the benefit of the Holders of Allowed Claims which have failed to claim such property. During the Claiming Period, Unclaimed Property due the Holder of an Allowed Claim shall be released from the Unpaid Claims Reserve and delivered to such Holder upon presentation of proper proof, to the Liquidating Agent, by such Holder of its entitlement thereto. In the event that there is Unclaimed Property in the Unpaid Claims Reserve with regard to any Claim, the Liquidating Agent shall, until such Unclaimed Property is claimed or the Claiming Period with regard to the Holder of such Claim has expired, make all subsequent Distributions due with regard to such Claim to the Unpaid Claims Reserve.  After the Claiming Period with regard to such Holder has expired, no subsequent Distributions shall be made on account of such Claim, and such Claim shall be treated as being disallowed, waived, and satisfied.  Additionally, after Distributions are completed and the Claiming Period has expired with respect to all Claims, and any and all Post-Confirmation Administrative Claims have been satisfied or paid, and assuming the amount of the checks that have not been claimed and/or cashed within the Claiming Period is less than ten thousand dollars ($10,000), the Liquidating Agent may distribute any and all such funds to the American Bankruptcy Institute as a charitable contribution.

     (b)    Upon the expiration of the Claiming Period, the Holder of an Allowed Claim previously entitled to Unclaimed Property shall cease to be entitled to a Distribution and the Unclaimed Property shall immediately be revested in the Liquidating Debtor.

     (c)    The Unpaid Claims Reserve may be maintained in an interest bearing account. No Holder entitled to funds from the Unpaid Claims Reserve shall be entitled to interest with regard to the amounts due.

    4.04    <u>Authorizations</u>. The entry of the Confirmation Order shall constitute authorization of the Debtor to take or cause to be taken any action necessary or appropriate to consummate the provisions of this Plan, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court.

    4.05    <u>Objections to Claims</u>. The Liquidating Debtor shall file objections to any Claim no later than thirty (30) days after the Effective Date (the "Claims Objection Deadline"), subject to the right of the Liquidating Debtor to seek entry of an order by the Bankruptcy Court, after notice and a hearing, further extending the period to file objections to Claims. Any objection to a Claim may be settled after the settling parties provide Designated Notice of the proposed settlement and there are no timely objections, and such Claim shall become an Allowed Claim without (i) further notice to any parties, and (ii) without the approval of the Bankruptcy Court. In the event of an objection, the Bankruptcy Court shall resolve the objection after notice and hearing.

    4.06    <u>Disputed Claims.</u>  In the event that an objection to a Claim is pending so that the Claim is a Disputed Claim, the Liquidating Agent shall not make any Distributions on account of such Claim until the Claim is an Allowed Claim. Once a Disputed Claim becomes an Allowed Claim, the Liquidating Agent shall pay on account of such Allowed Claim all Distributions to which such Allowed Claim would have been entitled had the Claim been an Allowed Claim when such Distributions were payable.

    4.07    <u>Avoidance Actions and Causes of Action</u>. Avoidance Actions and Causes of Action, other than rights, claims or causes of action of the Debtor against any individual officer or director that is an Insider (as defined in Section 101 of the Bankruptcy Code) and that is not retained or employed by IDSY, were included in the Purchased Assets acquired by IDSY. On March 6, 2019, the Committee and R. Fenton-May executed a Stipulation and Tolling Agreement Extending Statute of Limitations pursuant to which, among other things, the deadline for the filing of any Avoidance Actions or other similar actions against R. Fenton-May was extending through June 4, 2019. The Committee has not identified any such actions, and because the Restoration Payment has been received, the Committee will not prosecute any such actions.

    4.08    <u>Employment of Professionals</u>. The Liquidating Agent, on behalf of the Liquidating Debtor, shall be entitled to employ such additional professionals as may be

necessary after the Effective Date, including, but not limited to, the professionals employed by the Debtor and Committee prior to the Effective Date.

## Article V

## IMPLEMENTATION OF THE PLAN

5.01    <u>Revesting of Assets</u>. All property of the estate shall vest with the Liquidating Debtor on the Confirmation Date free and clear of Liens.

5.02    (a)    <u>The Distribution Fund</u>. Funds in the Distribution Fund shall be used to pay the following items in the priority indicated:

(1)    First, to pay, or to make a reasonable reserve for payment of, any and all unpaid Administrative Claims and Professional Fee Claims;

(2)    Second, Pro Rata to the Holders of General Unsecured Claims until such Holders receive the amounts in full the amounts as set forth in Article 3.01, subject to any necessary reserves provided herein; and

(3)    Third, and only after the Holders of Class 1 Claims receive payment in full of the amounts provided in Article 3.01, Pro Rata to the Interest Holders

(b)    When calculating Distributions, the Liquidating Agent shall make reserves for anticipated Post-Confirmation Administrative Claims, Post-Confirmation Professional Fees, and amounts otherwise payable with respect to a Disputed Claim.

(c)    The initial Distribution from the Distribution Fund shall occur as soon as reasonably practicable after the Effective Date. If there are reserves for Disputed Claims as provided below, the final Distribution shall occur as reasonably practicable after a Final Order is entered on the last pending Disputed Claim.

5.03    <u>Joint and Several Liability</u>.  Confirmation of the Plan shall not affect the joint and several liability of any codefendant, co-obligor, guarantor, or other entity that may be liable with the Liquidating Debtor, and such liability shall continue unabated to the extent of applicable non-bankruptcy law. Nothing herein shall be deemed to affect any right of subrogation to which any guarantor may be entitled under applicable non-bankruptcy law.

5.04    <u>Temporary Injunction</u>.  The Confirmation Order shall operate as an injunction against any acts against the Liquidating Debtor and its assets to initiate, prosecute, enforce, liquidate, collect or otherwise assert any Claim against the Liquidating Debtor and its assets except as provided in this Plan. Any act in violation of this provision shall be null and void.

## Article VI

EFFECT OF CONFIRMATION; VESTING OF PROPERTY; DISCHARGE

6.01    Effect of Confirmation. This Plan shall be binding on all parties in interest upon the Effective Date. Notwithstanding any provision that may be interpreted to the contrary, entry of the Confirmation Order shall not amend, modify, release, discharge, waive, or otherwise affect any of the Closing Obligations, it being the intent of the Plan that all Closing Obligations survive confirmation and remain in full force and effect.

6.02    Discharge.  Pursuant to Section 1141(d)(1) of the Bankruptcy Code, the Debtor shall not receive a discharge upon entry of the Confirmation Order confirming the Plan.

## Article VII

RETENTION OF JURISDICTION

7.01    Notwithstanding confirmation of this Plan or the Effective Date having occurred, the Bankruptcy Court shall retain jurisdiction for the following purposes:

    (a)    Determination of any objections to requests for payment of Administrative Claims, including Professional Fee Claims, whether such objections are filed before or after  the Effective Date of the Plan;

    (b)    Adjudication of any actions brought by or against the Debtor in the Bankruptcy Court before the Effective Date of the Plan;

    (c)    Resolution of controversies and disputes regarding the interpretation and implementation of this Plan, including the determination of defaults under the Plan;

    (d)    Implementation of the provisions of this Plan and entry of orders in aid of confirmation of this Plan;

    (e)    Determination of any tax liabilities pursuant to Section 505 of the Bankruptcy Code.

7.02    In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then such matter shall be heard and determined by the District Court for the Northern District of Georgia (the "District Court").  If the District Court does not have jurisdiction, then the matter may be brought before any Court having jurisdiction with regard thereto.

7.03    The Bankruptcy Court may, upon application of the Liquidating Debtor after Designated Notice, determine that this Plan has been substantially consummated within one-

15

hundred twenty (120) days after the Confirmation Date.  In such event, the Bankruptcy Court may enter an order closing this case pursuant to Section 350 of the Bankruptcy Code, provided, however, that: (a) the Liquidating Debtor shall continue to have the rights, powers, and duties set forth in this Plan; and (b) the Bankruptcy Court may from time to time reopen the case if appropriate for the purpose of enforcing provisions of the Plan or supervising its implementation, or for other cause.

## Article VII

### MODIFICATION OF PLAN

This Plan may be modified pursuant to Section 1127 of the Bankruptcy Code and as herein provided, to the extent permitted by applicable law.  The Plan may be modified, before or after confirmation, without notice or hearing, or on such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the modification does not materially and adversely affect the rights of any parties which have not had notice and an opportunity to be heard with regard thereto. Without limiting the generality of the foregoing, the Plan may be modified after notice and hearing to an entity that requested notice pursuant to Bankruptcy Rule 2002(i). In the event of any modification on or before confirmation, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject the Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties which have cast said votes.

## ARTICLE VIII

### REQUEST FOR CONFIRMATION PURSUANT TO § 1129(b)

In the event that all requirements for confirmation are met except the provisions of Section 1129(a)(8) of the Bankruptcy Code, the Debtor requests that the Plan be confirmed pursuant to Section 1129(b) of the Bankruptcy Code.

Dated: June 25, 2019

LAMBERTH, CIFELLI,
ELLIS & NASON, P.A.


By:  _/s/ G. Frank Nason, IV_
      G. Frank Nason, IV
      Georgia Bar No. 535160

1117 Perimeter Center West
Suite N313
Atlanta, Georgia 30338
(404) 262-7373

Counsel for the Debtor

16

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

By: */s/ Henry F. Sewell, Jr.*
      Henry F. Sewell, Jr.
      Georgia Bar No. 636265

2964 Peachtree Road NW
Suite 555
Atlanta, Georgia 30305
Direct: (404) 926-0053
hsewell@sewellfirm.com

Counsel for the Official Committee of Unsecured Creditors

-and-

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Bradford J. Sandler*
      Bradford J. Sandler
      (DE Bar No. 4142)
      Colin R. Robinson
      (DE Bar No. 5524)

919 North Market Street
17th Floor P.O. Box 8705
Wilmington, DE 19899 (Courier 19801)
(302) 652-4100
bsandler@pszjlaw.com
crobinson@pszjlaw.com

Counsel for the Official Committee of Unsecured Creditors

**SCHEDULE 2.04**

**(Priority Tax Claims)**

**CarrierWeb LLC**
**Sales Taxes**



| Name of Creditor | POC # (if received) | Claimed $ | Disputed | Total Payable $ | |
|---|---|---|---|---|---|
| Alabama | | 16.96 | | 16.96 | |
| Arizona | | 1,301.48 | | 1,301.48 | |
| Florida - Sales and Use tax | 44 | 7,028.33 | (7,028.33) | 1,817.97 | Per Order (Doc. No. 237) |
| Florida - Communications tax | 46 | 37,888.44 | (37,888.44) | 0.00 | Per Order (Doc. No. 237) |
| Georgia | 6 | 3,268.19 | (3,268.19) | 0.00 | Hearing Scheduled 6/27/2019 |
| Idaho | | 59.58 | | 59.58 | |
| Kansas | | 309.04 | | 309.04 | |
| Maryland | | 818.29 | | 818.29 | |
| Michigan | | 3,921.29 | | 3,921.29 | |
| Mississippi | 49 | 67.09 | | 67.09 | |
| Missouri | | 275.14 | | 275.14 | |
| New Jersey | 47 | 2,140.03 | | 2,140.03 | |
| Ohio | 42 | 8,426.21 | | 8,426.21 | |
| South Carolina | 46 | 2,905.45 | | 2,905.45 | |
| Tennessee | 45 | 31,837.76 | | 31,837.76 | |
| Texas | 12 | 9,139.66 | | 9,139.66 | |
| Texas | 14 | 0.00 | | 0.00 | |
| Utah | | 30.83 | | 30.83 | |
| Washington | 50 | 645.28 | | 645.28 | |
| Wisconsin | 31 | 46.61 | | 46.61 | |
| IRS | 1 | 450.09 | | 450.09 | |
| Texas | 12 | 6,675.64 | | 6,675.64 | |
| TOTAL | | 117,251.39 | (48,184.96) | 78,884.40 | |

**SCHEDULE 3.01**

**(General Unsecured Claims)**

**CarrierWeb LLC**
**Vendor Payments**

| Name of Creditor | POC # if received | POF Amount | Dispute/ Adjust | Amount Payable $ | |
|---|---|---|---|---|---|
| 548 Registered Agent Services, Inc. | | 49.00 | | 49.00 | |
| Accellos | | 14,000.00 | (14,000.00) | 0.00 | Per Schedule Amendment (Doc. No. 222) |
| Accountemps | 43 | 10,779.97 | | 10,779.97 | |
| Alabama Trucking Association | | 975.00 | | 975.00 | |
| Alan M. Wolf | | 384.00 | | 384.00 | |
| Allied Electronics | 27 | 2,453.40 | | 2,453.40 | |
| AMS Electronics Inc. | 7 | 29,225.82 | | 29,225.82 | |
| Avenues to Independence | | 250.00 | | 250.00 | |
| Baker Donelson | | 7,500.00 | | 7,500.00 | |
| BDO USA, LLP | 8 | 58,861.94 | | 58,861.94 | |
| Benton Global, LLC | | 7,045.13 | | 7,045.13 | |
| Brill Securities, Inc. | | 18,500.00 | | 18,500.00 | |
| CalAmp wireless Networks Corp. | | 888.61 | | 888.61 | |
| Citrix | | 1,470.00 | | 1,470.00 | |
| Coverall North America, Inc. | 26 | 349.00 | | 349.00 | |
| DK Technologies | 10 | 480.00 | | 480.00 | |
| Donald Durm | | 751.15 | | 751.15 | |
| FedEx | | 689.32 | | 689.32 | |
| Fitch, Even, Tabin & Flannery LLP | | 10,415.83 | | 10,415.83 | |
| FleetSavings | | 300.00 | | 300.00 | |
| Frazier and Deeter | | 0.00 | | 0.00 | |
| G2 Capital Advisors | | 92,081.18 | | 92,081.18 | |
| GGG Partners, LLC | | 6,387.50 | | 6,387.50 | |
| Hanover Insurance Co. | | 11,174.01 | | 11,174.01 | |
| IMTA | | 500.00 | | 500.00 | |
| Iron Mountain, Inc. | | 260.38 | | 260.38 | |
| Jim Gamache | | 163.17 | | 163.17 | |
| Kuehne & Nagel | | 2,078.18 | | 2,078.18 | |
| Lake Ridge Associates, LLC | | 1,651.00 | | 1,651.00 | |
| Louisiana Motor Transport Association | | 500.00 | | 500.00 | |
| Motla | 32 | 707,780.30 | | 707,780.30 | |
| North Carolina Trucking Association | | 1,198.00 | | 1,198.00 | |
| Ohio Trucking Association | 9 | 1,848.00 | | 1,848.00 | |
| Panavise Products, Inc. | 16 | 3,175.20 | | 3,175.20 | |
| Prime | 22 | 36,720.35 | (9,313.39) | 27,406.96 | Per order (Doc. No. 226) |
| Retirement Strategies, Inc. | | 1,250.00 | | 1,250.00 | |
| Robby Kettlehake - E | | 1,009.56 | | 1,009.56 | |
| Rousalyn Fenton-May - E | | 127,529.92 | | 127,529.92 | |
| Schrickel Capital Corp. | | 12,730.50 | | 12,730.50 | |
| Smith, Gambrell & Russell LLP | 11 | 23,094.50 | | 23,094.50 | |
| South Carolina Trucking Association | | 250.00 | | 250.00 | |
| Stoops Freightliner | 20 | 19,699.61 | | 19,699.61 | |
| SunTrust - Corporate Card | | 12,997.04 | | 12,997.04 | |
| Team One Logistics | | 1,331.77 | | 1,331.77 | |
| Tennessee Trucking Association | | 855.00 | | 855.00 | |
| Texas Trucking Association | | 1,000.00 | | 1,000.00 | |
| The ROITT Group | | 13,860.00 | | 13,860.00 | |
| TMW | | 4,500.00 | | 4,500.00 | |
| TMW Systems Inc. | | 1,200.00 | | 1,200.00 | |
| Transics International NV - Vendor | 30 | 6,376.00 | | 6,376.00 | |
| Travelers Indemnity | 29 | 0.00 | | 0.00 | |
| Truckload Carriers Association | | 1,685.00 | | 1,685.00 | |
| ULINE | 15 | 669.34 | | 669.34 | |
| UPS Freight | | 257.93 | | 257.93 | |
| UPS Supply Chain Solutions, Inc. | | 435.33 | | 435.33 | |
| Southern AG | | 4,260.56 | | 4,260.56 | |
| John Marcus | | 104,495.15 | | 104,495.15 | |
| Tri Star Freight | 41 | 88,294.95 | (88,294.95) | 0.00 | Per Order (Doc. No. 224) |
| Venture Logistics | | 1,622.37 | | 1,622.37 | |
| New Hampshire | | 500.00 | | 500.00 | |
| New York | | 1,500.00 | | 1,500.00 | |
| Wisconsin | | 300.00 | | 300.00 | |
| **TOTAL** | | **$1,462,589.97** | **($111,608.34)** | **$1,350,981.63** | |

**CarrierWeb LLC**
**Employee Payments - Pre-Petition**
**As of January 30th 2019**

| | POC # if received | POF Amount | Paid under Court Order | Adjusted POC Amount | POC Dispute/ Adjust | Amount Payable | |
|---|---|---|---|---|---|---|---|
| Bryan Stefan | 38 | 43,534.00 | (8,461.54) | 35,072.46 | (9,870.10) | 25,202.36 | Per Order (Doc. No. 227) |
| Deanna K Newcomb | 25 | 6,565.00 | | 6,565.00 | | 6,565.00 | |
| Eric Lin | | | | | | 4,750.88 | |
| Greg Griffin | 4 | 1,096.15 | | 1,096.15 | | 1,096.15 | |
| Hamlet J Malnda | | | | | | 9,000.00 | |
| Jeffrey A Vickers | | | | | | 9,250.00 | |
| John Chima | 39 | 7,584.62 | (4,234.62) | 3,350.00 | (3,350.00) | 0.00 | Per Order (Doc. No. 225) |
| Keith T O'Brien | | | | | | 38,631.68 | |
| Louis Sangster | | | | | | 0.00 | |
| Robert W Kettlehake | 24 | 16,395.00 | | 16,395.00 | (8,828.50) | 7,566.50 | |
| Roy M Lancor | 17 | 13,768.08 | (7,408.08) | 6,360.00 | 6,452.40 | 12,812.40 | |
| Shad A Bell | | | | | | 14,500.00 | |
| Tommy Clark | 18 | 35,772.00 | (2,716.00) | 33,056.00 | | 33,056.00 | Per Order (Doc. No. 228) |
| Trena J Wade | 23 | 14,100.50 | | 14,100.50 | | 14,100.50 | Per Order (Doc. No. 228) |
| William J Newlands | | | | | | 73,317.70 | |
| William M Sharpe | 33 | 30,454.71 | (6,984.63) | 23,470.08 | | 23,470.08 | Per Order (Doc. No. 229) |
| Wyatt Sweat | | | | | | 7,000.00 | |
| Jim Gamache - Payroll | 35 | 429,162.49 | | | (307,488.41) | 114,854.57 | Hearing Scheduled 9/4/2019 |
| **Total Bonuses and Commissions** | | | | | **($323,084.61)** | **$395,173.82** | |